GABRIEL LYNCH, RESPONDENT, v. WESTERN UNION TELEGRAPH COMPANY, APPELLANT.*

Kansas City Court of Appeals. April 29, 1929.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 899, p. 983, n. 99; 4CJ, section 3199, p. 1171, n. 50; Telegraphs and Telephones, 37Cyc, p. 1687, n. 18; p. 1703, n. 77; p. 1722, n. 61; p. 1746, n. 81; p. 1759, n. 69; Trial, 38Cyc, p. 1886, n. 8.

*Edmund Burke* for respondent.

*Francis R. Stark, Winger, Reeder, Barker, Gumbiner & Hazard* and *Mahan, Mahan & Fuller* for appellant.

ARNOLD, J.—Plaintiff's action is for damages resulting from negligent failure of defendant to transmit a certain telegram promptly and without material alterations.

The facts of record are that defendant is a corporation, organized and existing under the laws of the State of New York and authorized to do business in the State of Missouri; that it was engaged in the business of sending and receiving telegrams and maintained a telegraph line and offices and facilities for sending messages and money between the cities of Jefferson City and Moberly, Missouri. At the time in controversy and for a long time prior thereto, plaintiff had been engaged in the business of buying furs and pelts in southern Missouri and northern Arkansas, particularly in the vicinity south of Jefferson City, and selling them to one Gorman at Centralia, Missouri, upon a guaranteed price.

On January 17, 1928, plaintiff purchased a lot of fur pelts from one Lon Holt near Jefferson City, for the price and sum of $308.75, and in payment therefor gave his check of that date drawn on the Randolph County Trust Company at Moberly, Missouri, but at the time, plaintiff had not sufficient funds therein to cover the amount of his check. On the following day, to-wit, January 18, 1928, plaintiff called at the local office of defendant in Jefferson City and placed the following order with defendant:

"THE WESTERN UNION TELEGRAPH COMPANY:

"230 Madison St. Jefferson City, Mo., Jan. 18, 1928.
                      (Office)          (Date)
"Subject to the conditions below and on back hereof, which are hereby agreed to,

"Pay to Randolph County Trust Co.

"Street Adress

"Place, Moberly, Mo.

"Amount   Three   Hundred   Thirty-five   Dollars   and   no-100   cents ($335).

"And deliver the following message to payee:

"Credit my account

"Entered Jan. 23, 1928, Central Div. 7.

"Positive evidence of personal identity is NOT to be required from the Payee and I authorize and direct the Telegraph Company to pay the sum named in this order at my risk to such person as its agent believes to be the above named Payee, UNLESS the following is signed.

                                   "GABRIEL LYNCH

      "(Signature)   GABRIEL LYNCH,
      "(Sender's Address) 712 Taylor St., Moberly, Mo."

The conditions printed on the back of said order applying to this controversy are as follows:

"ALL MESSAGES TAKEN BY THIS COMPANY INCLUDED IN A MONEY ORDER ARE SUBJECT TO THE FOLLOWING TERMS:

"To guard against mistakes or delays, the sender of a telegram should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated telegram rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated telegram and paid for as such, in consideration whereof it is agreed between the sender of the telegram and this company as follows:

"1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any message received for transmission at the un-repeated message rate beyond the sum of five hundred dollars; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the repeated-message rate beyond the sum of five thousand dollars, UNLESS SPECIALLY VALUED; nor in any case for delays arising from unavoidable interruption in the working of its lines; nor for errors in cipher or obscure messages.

. . . . . . .

"5. The transferring of the money and the transmission of the message together constitute one transaction and the cancellation by either the sender or the company of the money order cancels also any obligation on the part of the company to deliver the message. The message will be delivered to the payee of the money order only as and when the money is paid."

Plaintiff paid the money, $335 and charges $2.03, and received a receipt therefor, dated January 18, 1928. It is of record the transfer and accompanying dispatch were sent from Jefferson City to the Moberly office of defendant, partly in code, as follows:

"Playful Randolph County Trust., Credit my account Nobody wafer.      GABRIEL LYNCH."

The code words were explained at the trial by J. E. Ikerd, manager of defendant's office at Jefferson City as follows: "Playful" means the guard word for that particular day and signifies the message refers to the transfer of money. "Nobody" means $300, and "wafer" means $35. The message was properly received at the Moberly office but Mr. Davis, the manager, overlooked the first code word and instead of delivering $335 to the trust company, he sent only $35, according to his testimony at the trial. He further stated that he filed the message in his money order draft book and heard no more about it for several days and not until his operator came into the office of the witness and said the trust company had told him

about the additional $300; that witness then investigated and found his mistake and immediately wrote a check for $300 and sent it to the trust company. The error was discovered and check for the $300 additional was sent on January 26, 1928.

On January 21, 1928, plaintiff's check given Lon Holt as above stated was presented to the drawee bank and payment refused because of insufficient funds. The check was then protested at an expense of $2.50, protest fee. The check was returned to Holt and on January 26th plaintiff was informed by telephone that the check had been protested. Telephone communication with Mr. Hon, president of the trust company, gave plaintiff the information that the bank had received $35 for his credit. Later, it appears Mr. Hon called defendant's office at Moberly and told them plaintiff claimed to ·have sent $335 instead of $35, and· defendant's agent said he would look it up and in a little while the additional amount ($300) was delivered at the bank. Defendant's agent thereupon made proper notations indicating completion of the payment to conform to the original order. The testimony tends to show that before plaintiff was notified the error had been corrected, he drove from Thayer to Moberly "to straighten the matter out." Defendant insists plaintiff was informed the error had been corrected before he left Thayer but evidence in plaintiff's behalf refutes this contention. On arriving in Moberly and learning defendant had corrected the error, plaintiff, through Gorman, requested: Holt to send to the bank the dishonored check and it would be paid, which was done.

The petition is in two counts, the first of which charges that on January 18, 1928, plaintiff delivered at defendant's office in Jefferson City, Missouri, a message to be sent by telegraph to the Randolph County Trust Co. at Moberly, a banking institution, and that this message was "in substance" as follows:

"I am herewith transmitting to you the sum of three hundred and thirty-five dollars to place to the credit of my account immediately."

Our foregoing statement covers most of the allegations of the first count, and

"Plaintiff says that by reason of the negligence of defendants, its agents and servants in failing and neglecting to transmit and deliver plaintiff's message to said Randolph County Trust Co., promptly and without material alteration payment of said check was refused by said Randolph County Trust Co., and same was protested on January 21, 1928, and plaintiff was notified by said Lon Holt that payment of same had been refused, and threatened plaintiff with prosecution by reason thereof. Plaintiff says that . . . it was necessary for plaintiff to make a trip from Arkansas to Jefferson City and Moberly, Missouri, and return to Arkansas and to incur great expense in connection with said trip, and that he was also

compelled to incur expense in long distance calls over the telephone in getting said matter adjusted . . . Plaintiff says that by reason of the negligence of the defendant, its agents and servants as aforesaid, and their failure and neglect to deliver promptly and without material alteration the message delivered to defendant at Jefferson City, Missouri, . . . he has been damaged in the sum of $2500, for which sum he prays judgment.''

For his second count plaintiff alleges the matters set out in detail in the first count and charges that under the provision of section 10136, Revised Statutes 1919, it was defendant's duty to transmit and deliver said message to the Randolph County Trust Co., at Moberly, Missouri, promptly and with due diligence, under a penalty of $300 for neglect or failure so to do. And that for failure of defendant so to transmit the message promptly and without material alterations, an action has accrued to plaintiff for the penalty provided by the statute, and he ''prays judgment for two-thirds of said sum of $300 for himself and one-third of said sum of $300 for the school fund of Randolph County, Missouri, and for costs as provided by said section 10136, Revised Statutes 1919.''

The amended answer to the first count of plaintiff's petition admits the corporate status of defendant as pleaded, that it is authorized to do business in the State of Missouri, and generally denies each and every other allegation of the petition. As affirmative defense, the answer alleges the telegram or money transfer was delivered and accepted by defendant, subject to the terms of a certain contract in writing which was defendant's standard message contract, as follows:

''To guard against mistakes or delays the sender of a telegram should order it repeated, that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated telegram rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated telegram and paid for as such, in consideration whereof it is agreed between the sender of the telegram and this company, as follows:

''The company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any message received for transmission at the unrepeated message rate beyond the sum of five hundred dollars; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any message received for transmission at the repeated message rate beyond the sum of 'five hundred dollars' (five thousand dollars) *unless specially valued;* nor in any case for delays arising from unavoidable interruptions in the working of its lines; nor for errors in cipher or obscure messages.''

That plaintiff agreed to such conditions, the answer avers; that said message was received by defendant for transmission at the un-

repeated message rate; that it was an intrastate message and that its schedule of rates for the transmission of messages was on file with the Public Service Commission of the State of Missouri.

The amended answer to the second count, after admitting defendant's corporate status, is a general denial. The reply admits plaintiff signed the contract referred to in defendant's answer, and denies generally all new matter contained in the answer.

At the inception of the trial defendant offered a written tender of judgment for plaintiff on the first count of the petition for the sum of $4.98, consisting of three items, to-wit, $2.03 for cost of the message, $2.50 protest fee, and interest on the $300, erroneously held by defendant for eight days. This tender was refused and the cause was tried to a jury. At the end of plaintiff's case defendant asked separate instructions on each of the two counts in its favor: each of which was refused; and again at the close of all the evidence, similar instructions were asked and refused. The jury returned a verdict for plaintiff for $223 on the first count and for $300 on the second. The verdict on each count was returned on a separate piece of paper. The court entered judgment in accordance with the verdict. Motions for a new trial and in arrest of judgment were overruled and defendant has appealed.

There are nine assignments of error but under appellant's points and authorities these are treated under six headings which we shall consider in the order presented. The first point urged is that there is a variance between the allegations and the proof; that the petition alleges the message sent was addressed to the Randolph County Trust Co., and read: "I am herewith transmitting to you the sum of $335 to be placed to the credit of my account immediately," and that plaintiff recovered under proof of a message which was not addressed to the Randolph County Trust Company, but to the Western Union Telegraph Company, which read, as shown by the proof:

"Amount three hundred thirty-five dollars and no cents" and a message to payee "Credit my account." And it is insisted that plaintiff cannot allege one cause of action in his petition and recover upon another. We are not impressed with defendant's position in this respect. The language of the petition covering this point is "which said message was in substance as follows: 'I am herewith transmitting to you'' etc. It is thus seen plaintiff makes no attempt to plead the message in haec verba, but gives the substance thereof.

Plaintiff bases his cause of action on the alleged failure of defendant to deliver the message without material change or alteration, and the proof in support of this charge was for the consideration of the jury. Under the provisions of section 1220, Revised Statutes 1919, it must be held the petition states a cause of action. No demurrer to the petition was offered and defendant answered

over. Defendant offered an instruction to find for plaintiff in the sum of $4.98, thus admitting that the petition stated a cause of action. Section 1272 provides:

"No variance between the allegation in the pleading and the proof shall be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits; when it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, by affidavit showing in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as shall be just."

Defendant has made no showing that it was misled to its prejudice by the allegations of the petition, as contemplated by the statute. We think section 1452 determines this point against defendant's contention, wherein it is said:

"Where the allegations of the cause of action or defense to which the proof is directed is unproved, not in some particular or particulars only, but in its entire scope and meaning, it shall not be deemed a case of variance, but a failure of proof."

Shantz v. Shriner, 167 Mo. App. 635, and cases therein cited. We rule against defendant on this point.

Under point 2, it is charged that if plaintiff were entitled to recover at all under the first count of the petition, his damages would be only the cost of the message ($2.03) the protest fee ($2.50) and interest on the $300 during the time it was in the hands of defendant. (45c), which amount was tendered by defendant as above stated. It is urged defendant had no knowledge or notice of any facts or circumstances which would render it liable for special damages; and that the company would be liable only for those damages which were within the reasonable contemplation of the parties at the time the contract was made; that the words "credit my account" would not lead defendant to believe plaintiff had given a check the day before the message was sent for an amount in excess of his credit with the trust company and that he was seeking to cover such overdraft in remitting by telegraph. It is insisted that where a telegraph company undertakes, for a consideration, to pay a sum of money to a person at a distant point and fails to perform its contract, the measure of damages is ordinarily interest on the money from the time of default until the tender. Cases are cited in support of this well-established rule, to which we need not refer. On the other hand it is quite as well established that, under circumstances such as are here presented, the plaintiff is entitled to recover for all damages which might reasonably have been within the contemplation of the parties. This point involves the question of proximate cause. This court held in Jacobs v. Western Union Tel. Co., 196 Mo. App. 300,

196 S. W. 31, in effect, that where according to the usual course of things a certain result will follow the breach of contract, or a duty founded on contract, the damage for such result is not remote and the breach is the proximate cause of the damage. In that case we also held that the printed stipulations on the back of the telegram, limiting the liability for delay in transmission and misdelivery written thereon, unless repeated, are valid. But the provision as to repeating the message will not apply where the message has been correctly transmitted, the fault being merely in neglect to deliver. This rule will be referred to herein in the discussion of another and separate charge of error. That opinion states the correct rule in respect to the questions under consideration here. In the instant case plaintiff's loss resulted directly and in the usual course, from defendant's error in failing to deliver the message sent. [Kerns v. Tel. Co., 170 Mo. App. 642, 157 S. W. 106; Fitch v. Tel. Co., 150 Mo. App. 149, 130 S. W. 44; Tippin v. Tel. Co., 185 S. W. 539; W. U. Tel. Co. v. Lawson, 182 Fed. 369.] Defendant, in its supplemental brief, undertakes to differentiate between the Jacobs case and the one at bar. But we think the rule therein applies with strong force to the case at bar. It is true the defendant need not have contemplated a particular injury, but may be held liable if the loss should have been reasonably contemplated. [W. U. T. Co. v. Taylor, 114 So. 529.] It has been held it is unnecessary that the telegraph company be apprised of the details of the message, but only that it is a business message and that loss will probably occur from delay or alteration. [Tel. Co. v. Milton, 43 So. 495, 53 Fla. 484; Tel. Co. v. Fish, 129 Atl. 14 (Md.); Fitch v. Tel. Co., 150 Mo. App. 149, 130 S. W. 44.] In the last case cited it was held that in an action against a telegraph company for failure to deliver a message, its liability for failure to exercise ordinary care and reasonable promptness in transmitting the message is the same whether the action be in tort or contract; and that one injured by a telegraph company's failure to transmit a telegram may sue either in contract or tort. That case also holds that in an action in tort against a telegraph company for failure to deliver a message, the company may be held for the direct and proximate consequences of its wrong without having received information respecting the nature of the message and the probable result of failure to deliver, essential in an action for breach of contract. But the message must show it relates to an important business transaction and that loss would probably result unless it was promptly transmitted. The rules just stated apply with determinative force to the facts before us. As a rule persons do not resort to the use of telegraph service in the transmission of money unless there is urgent need. The message here in question shows on its face such a situation as to inform de-

fendant of its nature and importance. We have all of defendant's citations and the arguments in both the original and supplemental briefs, but we must rule against defendant on this point. It was most natural that plaintiff would have deemed it necessary for him to go to Moberly to adjust the matter, under the circumstances, and the item of expense thus incurred was properly submitted to the jury.

Defendant complains the court erred in overruling its demurrer to the second count of the petition which is based upon section 10136, Revised Statutes 1919, pleaded therein, and it is urged this statute does not apply to messages transferring money by telegraph. This statute makes it the duty of telegraph and telephone companies doing business in this State to provide facilities for the prompt transaction of business with the public and to use due diligence to place messages in the hands of addressees "without material alterations promptly" and provides a penalty therefor, to-wit $300, to be recovered as costs of the suit, two-thirds to be retained by the plaintiff and one-third to be paid into the county school fund of the county in which the suit is brought. It was held in Burnett v. Tel. Co., 39 Mo. App. 599, and in other cases, that this statute being penal must be strictly construed. It is suggested that only part of the message in the instant case could be interpreted as a message to the trust company, viz., the words "credit my account" and that this part was delivered promptly and without alteration, and therefore the statute does not apply. We hold this contention to be without merit. It was held in Tel. Co. v. Smith, 143 S. E. (Ga. App.) 147, that the statutory penalty may be recovered for failure to deliver a money transfer message sent to the telegraph company's manager, but known to be for the benefit of another. Defendant points out that this case is now in the Supreme Court of Georgia on a writ of *certiorari*. We cite the case because we consider the doctrine sound. Moreover, as disclosed by the record, paragraph 5 of the contract on the reverse side of the message states:

"The transferring of the money and the transmission of the message together constitute one transaction . . ."

Under this rule of the company, the transmission of the message and delivery of the money appear to be regarded as one transaction. It is noted also that the blank form furnished by defendant and which plaintiff signed, provides:

"For only a few cents more, you can send a message with the money, saving cost of a separate message," etc.

Whether or not plaintiff paid the "few cents more" is not clear from the record; but that point is not stressed by either party, and as plaintiff did send a message with the money order, the jury might reasonably conclude that he paid the extra "few cents" and thereby complied with the rule.

It is true, as contended by defendant, that the statute under consideration is panel and must be strictly construed, and may not be extended by implication to cases which do not come squarely within its terms. [Tel. Co. v. Walker Bros., 81 S. E. (Va.) 74; 37 Cyc. 1703-4.] The case of Held v. Tel. Co., 178 S. W. 221, cited by defendant, has no application to the situation here presented and the other citations of defendant on this point are found, on examination, to be equally inapplicable. We hold, therefore, the trial court did not err in overruling defendant's ·demurrer to the second count of the petition.

It is charged the court erred in giving plaintiff's instruction No. 1, because it assumed (1) that defendant was negligent and (2) that plaintiff has been damaged by reason of his check going to protest and by loss of time and expenses incurred in discovering and correcting defendant's error. These were constitutive elements of plaintiff's right to recover and we find the instruction does not assume these elements but requires a finding thereon. The same rule applies to instruction No. 2, to which defendant objects on account of the use of the word "erroneously" therein, as follows:

". . . if you believe and find from the evidence that . . . plaintiff paid the charges for transmitting said money and message, and you further believe and find from the evidence that the defendant negligently delivered to said Randolph Trust Company such message erroneously reading 'amount $35, credit my account,'" etc.

The complaint is that the word "erroneously" does not appear in the petition. It is true the word is not used in the petition but defendant's answer pleads its own rules, suggesting the message be repeated to guard against mistakes. The petition charges defendant failed and neglected to deliver the message without material change. We think this charge sufficiently broad to cover the point urged, and it is a fact that defendant's evidence is to the effect that its manager at Moberly overlooked one code word in the message which is the basis of the controversy. We find no error in this respect. It may be proper to suggest that we find no grounds from which the jury might have concluded the message should have been ordered repeated. Defendant's evidence is that the message was received in proper form at Moberly and that it was erroneously read. We hold instruction No. 2 was proper.

Finally it is urged the court erred in receiving two separate verdicts in the case, "and receiving the verdict on the second count for $300 in favor of the plaintiff when he is entitled under the statute and his pleading to only $200." The law provides there shall be a separate finding on each count. Moreover this question was not raised in the motion for a new trial or in arrest of judgment and defendant is precluded from raising it now.

We find no reversible error of record, and accordingly the judgment is affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.